IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID HUTZLER, | ) | CASE NO. 5:05CV0100 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE O'MALLEY |
| v. | ) | |
| | ) | MAGISTRATE JUDGE HEMANN |
| JAMES S. HAVILAND, Warden, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2). Before the court is David Hutzler's ("Hutzler") petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Hutzler is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to a journal entry of sentence in the case of *State of Ohio v. Hutzler*, Case No. 2002-03-0592 (Summit County 2002). For the reasons given below the magistrate judge recommends that the petition be denied.

I.

The state appellate court reviewing Hutzler's conviction described the following facts as emerging from the testimony of the witnesses at Hutzler's trial:

> At approximately 5:00 a.m. on April 5, 2000, a 911 dispatcher received a call from 260 Oakdale Avenue in Akron, Ohio. The dispatcher heard no response when she answered and the call was quickly disconnected. The dispatcher called back the number and, although the call was answered, the dispatcher heard only an indistinguishable scuffle before the call was again disconnected. Akron Police officers were dispatched to the scene. When the officers arrived, they found the side door to the entryway pried open, blood spots on the floor of the entryway and, in the upstairs

apartment, they found only Danielle Maximovich, who had been shot repeatedly and was lying unconscious on the living room floor. Maximovich was later pronounced dead at the scene.

The evidence at the scene included the phones that had apparently been used to place and receive the 911 calls, 9 mm shell casings, and several blood spots found in the entryway downstairs from Maximovich's apartment. The evidence suggested that Maximovich had made the 911 call from a phone attached to the wall, that the killer had ripped the cord out of the wall, disconnecting the call, and when the dispatcher called back, Maximovich was able to answer a cordless handset, but the killer must have taken the handset from her and again disconnected the call.

There were apparently no witnesses to the murder other than the murderer and the deceased victim. A young neighbor of the victim, however, was awakened by the commotion, looked out her window after the shots were fired, and saw a man with a gun standing outside the victim's building. She described the man as a black man in his early thirties, approximately five foot eleven and one hundred seventy to one hundred seventy-five pounds.

The police initially found no evidence of drug activity at the scene, but their investigation revealed that Maximovich had been selling cocaine from her apartment on a regular basis and that cocaine and cash had been stolen from the apartment that night. Although the police had several suspects at one time, each was eventually ruled out except Hutzler. Although Hutzler was the same approximate size as the description given by the eyewitness, he did not completely match the eyewitnesses [sic] description because he was a white male. The police had DNA evidence linking Hutzler to the murder, however, and they considered the DNA evidence to be more reliable than the eyewitness identification.

The evidence linking Hutzler to the murder included his fingerprint on the handset of the cordless phone, his wet blood found in the entryway and phone records indicating that Hutzler had made twenty-seven calls to the victim's apartment during the hours surrounding the murder; the calls ceased at approximately 3:46 a.m, and one more call was made after the murder at approximately 6:12 a.m. Hutzler explained to police that he had been to the apartment to purchase drugs from the victim at approximately 9:00 p.m. on April 4 but claimed he had not seen her since that time. According to the police, the blood found in the entryway was bright red and still wet when they arrived at the scene. Experts further indicated that if the blood had been there since 9:00 p.m., the blood would have dried and become a rust-like color.

*State v. Hutzler*, 2003 WL 23095156, at *1 (Ohio App. Dec. 31, 2003).

The March term of the Summit County grand jury indicted Hutzler on charges of

aggravated murder, aggravated robbery, and aggravated burglary, each with firearm specifications. A jury found Hutzler guilty as charged. The firearms specifications were merged for purposes of sentencing. On October 30, 2002 the court sentenced Hutzler to three years' imprisonment for the firearms specifications, life imprisonment for aggravated murder, ten years' imprisonment for aggravated robbery, and ten years' imprisonment for aggravated burglary, all sentences to be served consecutively.

On December 2, 2002 Hutzler filed a notice of appeal in the state appellate court. In his brief in support of his appeal, Hutzler asserted nine assignments of error:

ASSIGNMENT OF ERROR NUMBER ONE

THE TRIAL COURT ERRED IN ALLOWING ADMISSION OF THE COMPOSITE DRAWING OF THE SUSPECT IN THE CASE, OVER OBJECTION. THIS ADMISSION WAS UNDULY PREJUDICIAL TO APPELLANT DURING THE COURSE OF HIS TRIAL AND DENIED APPELLANT HIS RIGHTS AS OFFERED UNDER THE 4TH, 5TH, 6TH, AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

ASSIGNMENT OF ERROR NUMBER TWO

APPELLANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE 4TH, 5TH, 6TH AND 14TH AMENDMENTS TO THE U.S. CONSTITUTION AS WELL AS ARTICLE 1 §10 OF THE OHIO CONSTITUTION WAS EFFECTIVELY DENIED BY THE TRIAL COURT'S INEFFECTIVE PRESENTATION.

  A   Voire [sic] Dire
  B   Trial Strategy

ASSIGNMENT OF ERROR NUMBER THREE

THE TRIAL COURT ERRED DURING VOIRE [sic] DIRE IN EXCUSING A POTENTIAL JUROR WITH PERSONAL KNOWLEDGE OF APPELLANT WHEN THE JUROR SPECIFICALLY INDICATED HER ABILITY TO REMAIN FAIR AND IMPARTIAL, AND THEN ALLOWING ANOTHER JUROR WITH PERSOHNAL KNOWLEDGE MAKING SIMILAR AFFIRMATIONS TO REMAIN IN THE JURY POOL[.]

ASSIGNMENT OF ERROR NUMBER FOUR

THE TRIAL COURT ERRED IN ADMITTING STATE'S EXHIBIT 60, THEREBY DENYING APPELLANT HIS RIGHT TO DUE PROCESS AND FAIR TRIAL AS GUARANTEED BY THE 4TH, 5TH, 6TH, AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AS WELL AS ARTICLE 1 §10 OF THE OHIO STATE CONSTITUTION.

ASSIGNMENT OF ERROR NUMBER FIVE

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS.  THE BLOOD DRAW AS WELL AS FOR HIS ORAL STATEMENTS [sic] MADE WITHOUT THE BENEFIT OF COUNSEL, IN VIOLATION OF HIS DUE PROCESS RIGHTS AS GUARANTEED BY THE 4TH, 5TH, 6TH AND 14TH AMENDMENTS TO THE U.S. CONSTITUTION AS WELL AS ARTICLE 1 §10 OF THE OHIO CONSTITUTION.

- A    Blood Draw
- B    Statement, April 8, 2000
- C    Statement. May 2, 2000

ASSIGNMENT OF ERROR NUMBER SIX

THE TRIAL COURT ERRED IN OVERRULING APPELLANT COUNSEL'S OBJECTION TO THE OFFER AND ADMISSION OF AUTOPSY PHOTOGRAPHS (EXHIBIT 39).  THESE PHOTOGRAPHS WERE DUPLICATIVE, REPETITIVE, AND HIGHLY PREJUDICIAL TO APPELLANT AND VIOLATE OHIO EVIDENTIARY RULE 403.

ASSIGNMENT OF ERROR NUMBER SEVEN

THE TRIAL COURT ERRED IN OVERRULING APPELLANT COUNSEL'S OBJECTION DURING THE STATE'S CLOSING ARGUMENT.  THE COURT ERRED IN NOT STRIKING SAID PORTION OF THE STATE'S CLOSING ARGUMENT AND IN NOT INSTRUCTING THE JURY TO DISREGARD A STATEMENT THAT WAS MADE IN CLOSING WITHOUT EXPERT TESTIMONY WHICH WAS HIGHLY PREJUDICIAL TO APPELLANT IN VIOLATION OF HIS RIGHT TO DUE PROCESS AND FAIR TRIAL, AS GUARANTEED BY THE 4TH, 5TH, 6TH, AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AS WELL AS ARTICLE 1 SECTION 16 THE OHIO STATE CONSTITUTION[.]

ASSIGNMENT OF ERROR NUMBER EIGHT

>THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL MADE AT THE CLOSE OF THE STATE'S CASE. SUFFICIENT EVIDENCE WAS NOT PRESENTED ON EACH OF THE ELEMENTS OF THE OFFENSES SUCH THAT THE CASE COULD PROCEED TO THE JURY IN VIOLATION OF APPELLANT'S RIGHT TO DUE PROCESS AND FAIR TRIAL AS GUARANTEED BY THE 4TH, 5TH, 6TH, AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AS WELL AS ARTICLE 1 SECTION 16 OF THE OHIO STATE CONSTITUTION.
>
>ASSIGNMENT OF ERROR NUMBER NINE
>
>AFTER REVIEWING THE PRESENTED EVIDENCE AT TRIAL AND EVALUATING APPELLANT'S ARGUMENTS ON APPEAL, IT IS CLEAR THAT APPELLANT'S ORIGINAL CONVICTION WENT AGAINST THE SUFFICIENCY OF THE EVIDENCE AND MANIFEST WEIGHT OF THE PRESENTED EVIDENCE IN VIOLATION OF APPELLANT'S RIGHT TO DUE PROCESS AND FAIR TRIAL AS GUARANTEED BY THE 4TH, 5TH, 6TH, AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AS WELL AS ARTICLE 1 SECTION 16 OF THE OHIO STATE CONSTITUTION[.]

On December 31, 2003 the state appellate court overruled Hutzler's assignments of error and affirmed the judgment of the trial court.

Hutzler filed a timely appeal in the Ohio Supreme Court. He presented nine propositions of law in his memorandum in support of jurisdiction:

>PROPOSITION OF LAW ONE:  The Trial Court erred in allowing admission of the composite drawing of the suspect in the case, over objection.  This admission was unduly prejudicial to Appellant during the courts of his trial and denied Appellant his rights as offered under the 4th, 5th, 6th, and 14th Amendments to the United States Constitution.
>
>PROPOSITION OF LAW TWO:  Appellant's right to due process of law as guaranteed by the 4th, 5th, 6th and 14th amendments to the United States Constitution as well as Article 1, §10 of the Ohio Constitution.  [sic]
>
>PROPOSITION OF LAW THREE: The Trial Court erred in denying Appellant's Motion to Suppress.  The blood draw as well as his oral statements were made without benefit of counsel, in violation of his due process rights as guaranteed by the 4th, 5th, 6th and 14th Amendments to the United States Constitution, as well as Article 1, §10 of the

Ohio Constitution.

PROPOSITION OF LAW FOUR:  The Trial Court erred in admitting State's exhibit 60, thereby denying Appellant his right to due process and fair trial as guaranteed by the 4th, 5th, 6th and 14th Amendments as well as Article 1, §10 of the Ohio Constitution.

PROPOSITION OF LAW FIVE: The Trial Court erred in overruling Appellant Counsel's objection to the offer and admission of autopsy photographs (Exhibit 39).  These photographs were duplicative, repetitive, and highly prejudicial to appellant and violate Ohio Evidentiary Rule 403.

PROPOSITION OF LAW SIX:  The Trial Court erred in overruling Appellant Counsel's objection during the State's closing argument.  The Court erred in not striking said portion of the state's closing argument and not instructing the jury to disregard a statement that was made in closing without expert testimony and which was highly prejudicial to appellant in violation of his right to due process and fair trial as guaranteed by the 4th, 5th, 6th and 14th Amendments as well as Article 1, §10 of the Ohio Constitution.

PROPOSITION OF LAW SEVEN:  The Trial Court erred when it excused potential, as well as sitting, jurors who had knowledge of Appellant's Father, thereby denying him his right to due process as guaranteed 14th Amendment as well as Article 1, §10 of the Ohio Constitution.

PROPOSITION OF LAW EIGHT:  The Trial Court erred in overruling Appellant's Rule 29 Motion for Judgment of Acquittal made at the close of the state's case. Sufficient evidence was not presented on each of the elements of the offenses such that the case could proceed to the jury.  This violated Appellant's right to due process and fair trial as guaranteed by the 4th, 5th, 6th and 14th Amendments as well as Article 1, §10 of the Ohio Constitution.

PROPOSITION OF LAW TEN:  It is clear that Appellant's original conviction went against the sufficiency and manifest weight of the presented evidence in violation of Appellant's right to process and fair trial  as guaranteed by the 4th, 5th, 6th and 14th Amendments as well as Article 1, §10 of the Ohio Constitution.

On May 26, 2004 the Ohio Supreme Court denied Hutzler leave to appeal and dismissed his appeal as not involving any substantial constitutional question.

On January 20, 2005 Hutzler filed a petition for a federal writ of habeas corpus in this court.  Hutzler raises three grounds for relief in his petition:

6

GROUND FOR RELIEF ONE
: Petitioner Hutzler was denied the effective assistance of counsel under the Sixth Amendment of the United States Constitution when his trial counsel failed to challenge five (5) biased jurors, and opened the door to overly prejudicial evidence that was already ruled inadmissible.

GROUND FOR RELIEF TWO
: The State Court unreasonably applied the Supreme Court's holding in *Miller v. Pate* when the court overruled Petitioner counsel's objection to the use of false evidence during the closing argument, thereby violating Petitioner Hutzler's Fourteenth Amendment Due Process fight to a fair trial.

GROUND FOR RELIEF THREE
: The Court of Appeals unreasonably applied the holding in *Stoval v. Denno* because it gave deference to the Trial Court's decision to admit State's exhibit 60. Exhibit 60 was a mug shot and amounted to an overly suggestive single person showup, thereby denying Petitioner his right to due process and fair trial as guaranteed by the 4th, 5th, 6th and 14th Amendments of the United States.

Respondent filed a Return of Writ on June 8, 2005 (Docket #10). Thus, the petition is ready for decision.

II

*A.    Jurisdiction*

Writs of habeas corpus may be granted by a district court within its respective jurisdiction:

> Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a) and (d). Hutzler was convicted in the court of common pleas in Summit County, and Hutzler filed his writ of habeas corpus in the Northern District of Ohio. This court has jurisdiction over Hutzler's petition.

7

B.   *Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings.  28 U.S.C. § 2254(e)(2).  There is no need for an evidentiary hearing in the instant case.  All Hutzler's claims involve legal issues which can be independently resolved without additional factual inquiry.

C.   *Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus.  28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain available, the petitioner has not exhausted state remedies.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies.  *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989).  "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."  *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986).  The exhaustion requirement is satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

Hutzler has no remaining state remedies for his claims.  For this reason Hutzler's

8

claims have been exhausted.

D.     *Procedural default*

Procedural default occurs when a petitioner fails to present fairly his or her constitutional claims to the highest state court in a federal constitutional context.  *Anderson*, 489 U.S. 4; *Picard*, 404 U.S. 270.  Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

If the state argues that a petitioner has procedurally defaulted a claim, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

9

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  A default will also be excused if petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.  "[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence . . . ."  *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992).

Respondent argues that Hutzler has procedurally defaulted all three of his grounds for relief.  The court will examine respondent's argument as regards each of Hutler's claims.

A.  *Procedural default and Hutzler's first ground for relief.*

In his first ground for relief Hutzler contends that he had ineffective assistance of trial counsel because trial counsel failed to challenge five jurors as biased and opened the door to overly prejudicial evidence that had previously been ruled inadmissible.  Respondent contends that Hutzler has procedurally defaulted this claim for relief because he failed to observe state and local procedural rules.

In overruling Hutzler's second assignment of error, the state appellate court found as follows:

> Although Hutzler has set forth an argument to support his contentions, he has failed to cite any legal authority to demonstrate that trial counsel even erred, much less caused him prejudice so as to deprive him of a fair trial. "An appellate court may disregard an assignment of error pursuant to App. R. 12(A)(2) if an appellant fails to cite to any legal authority in support of an argument as required by App. R. 16(A)(7)." *State v. Martin* (July 12, 1999), 12th Dist. No. CA99-01-003, citing *Meerhoff v. Huntington Mtge. Co.* (1995), 103 Ohio App.3d 164, 169, 658 N.E.2d 1109. Furthermore, Loc. R. 7(A)(7) provides, in part, that "[t]he argument shall contain the contentions of the appellant with respect to the assignments of error and the supporting reasons with citations to the authorities and statutes on which the appellant relies." "If an argument exists that can support this assignment of error, it is not this court's duty to root it out." *Cardone v. Cardone* (May 6, 1998), 9th Dist. Nos. 18349 and 18673,

at 18. Because Hutzler has failed to cite legal authority to support his arguments, and this Court will not make his arguments for him, his second assignment of error is overruled.

*Hutzler*, 2003 WL 23095156 at *3.

The state appellate dismissed Hutzler's claim for violations of state procedural rules. Hutzler does not show that Ohio courts fail to enforce these state procedures, nor does Hutzler show that the rules cited are not "adequate and independent" state grounds on which the state can rely to foreclose this court's review of Hutzler's claim. Thus, Hutzler has procedurally defaulted his first ground for relief.

Hutzler does not show cause for his procedural default or demonstrate prejudice resulting from his default. For these reasons the magistrate judge recommends that the court overrule Hutzler's first ground for relief as procedurally defaulted.

B.   *Procedural default and Hutzler's second ground for relief*

In his second ground for relief Hutzler contends that the trial court unreasonably applied the Supreme Court's holding in *Miller v. Pate* when it overruled Hutzler's objection to the use of "false" evidence during the closing argument. Respondent contends that Hutzler has procedurally defaulted this claim for relief because Hutzler does not present the same claim to this court as he presented to the state courts.

In arguing this claim to the state appellate court, Hutzler made the following argument:

> During the State's closing argument, counsel for the State of Ohio discussed blood samples that were found in the doorway and on the doorjamb of the side door of the home located at 260 Oakdale Avenue. Counsel stated that there was a "swipe" of the door and in testing that swipe the detective determined that the blood of the Appellant and Danielle Maximovich are contained in that swipe of the door. (Transcript, p. 890, line 7-14)  Appellant's counsel objects to these statements made during the closing argument, but is overruled. It is in overruling Appellant's objections

>> that the trial court erred.
>> Appellant's counsel objected to this line of closing argument as argumentative and for using terminology related to the testing of the blood samples that was not in Jennifer Innes' testimony or report.  The term "swipe" is highly prejudicial to Appellant as the testimony offered in the State's closing argument is not substantiated by what Jennifer Innes testified to during the trial.  Additionally, the trial court erred in not have said comments of the State stricken from the record [sic], and erred in not instructing the jury to disregard this portion of the State's closing argument so that the jury could rely on their own collective memory of what occurred during the trial.  Said error by the trial court prejudiced the Appellant in that Appellant was denied his right of due process as guaranteed by the 5th, 6th, and 14th Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

Appellant's Brief, Return of Writ, Exh. C, pp. 25-26. In arguing this claim in his petition, Hutzler argues as follows:

>> In *Miller v. Pate*, [t]he United States Supreme Court held that the Fourteenth Amendment cannot tolerate a state criminal conviction obtained by the knowing use of false evidence. 386 U.S. 1 (1967), citing *Mooney v. Holohan*, 294 U.S. 103 (1935). In *Miller*, the Supreme Court held that a state prisoner was entitled to federal habeas relief upon a showing that a pair of stained undershorts, allegedly belonging to the prisoner and repeatedly described by the state as stained with blood, was in fact stained with paint.  *Id.*  During the State's closing argument, Counselk for the State discussed blood samples that were found in the doorway and on the doorjamb of the side door of the home located at 260 Oakdale Avenue.
>> Counsel stated that there was a "swipe" of the door and in testing that swipe; [sic] the [d]etective determined that the blood of both Petitioner and Danielle Maximovich are contained in that swipe of the door. (Tr. at 890).  Petitioner's [c]ounsel objected to these statements and was overruled.  The term "swipe" was never corroborated nor substantiated by any testimony, expert or otherwise.  The Bureau of Criminal Investigations (BCI) witness stated that she could not tell how the blood got on the door. (Tr. at 537).  Furthermore, the BCI witness stated that she could not draw any conclusions about whose blood was mixed with Mr. Hutzler's.
>> The Prosecutor introduced false evidence that had not been established at trial and the trial court did not strike these comments from the record.  This case is similar to *Miller* in that the prosecution knowingly used false information, specifically related to blood at a crime scene, to obtain a conviction.  The Court of Appeals unreasonably applied the Supreme Court holding in *Miller v. Pate*, and in so doing, violated Mr. Hutzler's Fourteenth Amendment guarantee of [d]ue [p]rocess.

Petition at 12-13 (capitalization altered from original).

12

Hutzler's argument in the state appellate court, although confused and ambiguous, appears to contend that the prosecutor's use of the term "swipe," a term not used by the state's witnesses, was so highly prejudicial that Hutzler was denied his due process rights. This, indeed, was how the state appellate court interpreted Hutzler's argument:

> Hutzler has argued that the trial court erred in failing to strike the following portion of the state's closing argument:
>
> > "And on the way out there's a swipe of the door, a swipe, that's exactly what she called it.  It's a word of art for an investigator, it is a swipe, and in testing that swipe she determines that the blood of both Mr. Hutzler and the victim are contained in that swipe on the door."
>
> A prosecutor's remarks constitute reversible error only if the remarks were improper and the remarks prejudicially affected an accused's substantial rights. *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 470 N.E.2d 883, citing *Unitied States v. Dorr* (C.A.5, 1981), 636 F.2d 117, 120.  The focus of the analysis "is the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips* (1982), 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78.
>
> Hutzler has asserted that the jury was misled by the prosecutor's use of the term "swipe" because the witness who conducted the DNA tests never used that specific term, nor was it substantiated by her testimony.  A review of other witnesses' testimony, however, reveals that the testimony of the police officer who actually collected the blood samples used the term "smear or transfer" to describe the blood stain on the door and explained that a smear or transfer has usually "been wiped on there, like it was on something, hand smear, jacket, something put it there."
>
> The word "swipe" is defined as "a strong sweeping * * * stroke."  Webster's Third New International Dictionary (1993) 2313.  The term "smear" is similarly defined as "material smeared on a surface."  *Id.* at 2150.  Either term could be used to describe the blood stain that appeared on the door because someone wiped the blood across it, as opposed to the blood dripping or splattering onto the door.  Consequently, the prosecutor's use of the term "swipe" rather than "smear" did not serve to mislead the jury.

*Hutzler*, 2003 WL 23095156 at *6.  Hutzler's argument in this court, however, does not address the allegedly prejudicial language of the prosecutor but contends that the substance

13

of the prosecutor's remarks was false. This is not the same claim that was made to the state appellate court.

Hutzler failed to raise the second ground for relief as contained in his petition to the highest court in the state, and he does not demonstrate cause for this default or prejudice resulting from it. For this reason the magistrate judge recommends that the court overrule Hutzler's second ground for relief as procedurally defaulted.

C. *Procedural default and Hutzler's third ground for relief*

In his third ground for relief Hutzler contends that the court of appeals unreasonably applied the holding in *Stoval v. Denno* because it gave deference to the trial court's decision to admit state's exhibit 60. Respondent contends that Hutzler has procedurally defaulted this claim for relief because he failed to raise this claim in the state courts as a federal claim.

In arguing in the state appellate court that the trial court's admission of exhibit 60 was improper, Hutzler contended that admission of the exhibit violated state evidentiary law. He did not argue that the admission violated federal law or the federal constitution, and he cited no federal case or statute in making his argument. Hutzler argued in the Ohio Supreme Court that admission of the exhibit violated his federal right to due process, but this is not sufficient. Under Ohio law, a criminal constitutional question cannot ordinarily be raised in the Ohio Supreme Court unless it is first presented in the court below. *State v. Jester*, 32 Ohio St. 3d, 147, 154, 512 N.E. 2d 962 (1987). It is unlikely that the Ohio Supreme Court would reach the merits of a claim that was not raised in the underlying appellate proceeding. Where the state courts are silent as to the reasons for denying a petitioner's due process claim, the Sixth Circuit has applied the presumption that the state court "would not have ignored its own

14

procedural rules and would have enforced the procedural bar." *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996). Thus, this court must assume that the Ohio Supreme Court dismissed the federal claim because Hutzler failed to raise it in the state appellate court.

Hutzler failed properly to present to the Ohio Supreme Court his federal claim that admitting exhibit 60 violated his due process rights. Hutzler does not demonstrate cause for this default or prejudice resulting from it. For this reason the magistrate judge recommends that the court overrule Hutzler's third ground for relief as procedurally defaulted.

III

For the reasons given above the magistrate judge recommends that the court deny Hutzler's petition and dismiss it with prejudice.


Date: July 26, 2005                 /s/Patricia A. Hemann
                                    Patricia A. Hemann
                                    United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985) reh'g denied, 474 U.S. 1111 (1986).